In The

# United States Court of Appeals
### For The Fourth Circuit

## PETR BOCEK, M.D., PHD,

*Plaintiff – Appellant*,

v.

## JGA ASSOCIATES, LLC; JOSEPH P. AMATO,

*Defendants – Appellees*,

and

## ALLERGY CARE CENTERS, VIRGINIA, INC.; A2 MEDICAL GROUP, INC.,

*Defendant*,

## LENKA BOCEK,

*Movant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA**

———————————

## CORRECTED BRIEF OF APPELLEES

———————————

David E. Sher
Mark D. Cummings
Kristen M. Kanaskie (Fourth Circuit Admission Pending)
SHER, CUMMINGS AND ELLIS, PLLC
3800 North Fairfax Drive, Suite 7
Arlington, Virginia 22203
(703) 525-1200

*Counsel for Appellees*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 14-1208     Caption: Petr Bocek v. JGA Associates, LLC, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

JGA Associates, LLC
(name of party/amicus)

_____

who is _____ Appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations? ☐ YES ☑ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
    If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____     Date: _Apr 16, 2014_

Counsel for: Appellee, JGA Associates, LLC

## CERTIFICATE OF SERVICE
****************************

I certify that on ____April 16, 2014____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

S. Micah Salb, Esq.
Mary E. Kuntz, Esq.
Lippman Semsker & Salb LLC
7979 Old Georgetown Road
Bethesda, MD 20814


_____          _Apr 16, 2014_
(signature)                                        (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 14-1208        Caption: Petr Bocek v. JGA Associates, LLC, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Joseph P. Amato
(name of party/amicus)

who is _____ Appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.  Does party/amicus have any parent corporations?  ☐YES ☑NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
    If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:


Signature: _____     Date: Apr 16, 2014

Counsel for: Appellee, Joseph P. Amato

## CERTIFICATE OF SERVICE
****************************

I certify that on ____April 16, 2014____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

S. Micah Salb, Esq.
Mary E. Kuntz, Esq.
Lippman Semsker & Salb LLC
7979 Old Georgetown Road
Bethesda, MD 20814


_____          Apr 16, 2014
        (signature)                      (date)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF ISSUES .....................................................................1

STATEMENT OF CASE ........................................................................2

SUMMARY OF ARUGMENT ..............................................................11

STANDARD OF REVIEW .....................................................................13

ARGUMENT .........................................................................................15

    A.     Upon Consideration of the Testimony and All Supporting Evidence Presented, the District Court Properly Determined that Appellant Failed to Carry his Burden to Prove the Existence of an Agent-Principal Relationship to Support his Claim for Breach of Fiduciary Duty ...................................................15

        1.     The question of whether an agency relationship exists is a question of fact.......................................................................15

        2.     The District Court properly considered the conduct of the parties and the surrounding facts and circumstances in finding that the evidence failed to prove an agent-principal relationship ...............................................................16

        3.     The District Court correctly determined that Appellant failed to prove the existence of an agent-principal relationship to support his claim for breach of fiduciary duty.......................................................................................18

        4.     Appellant's reliance on this Court's opinion in the First Appeal is inapposite to the current posture...............................26

i

B.     The District Court Correctly Determined that Appellant Failed to Prove Recoverable Damages..........................................................28

C.     Appellant Has Not Demonstrated a Sufficient Showing of Impartiality to Warrant the Recusal and Reassignment of the District Court Judge in this Case.........................................................34

CONCLUSION .....................................................................................................36

REQUEST FOR ORAL ARGUMENT

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allen v. Lindstrom*,
379 S.E.2d 450 (Va. 1989) ............................................................18

*Anderson v. City of Bessemer City, North* Carolina,
470 U.S. 564 (1985) ..............................................................13, 14

*Banks v. Mario Indus.*,
650 S.E.2d 687 (Va. 2007) ....................................................29, 30

*Chandler v. Kelley*,
141 S.E. 389 (Va. 1928) ................................................................19

*Drake v. Livesay*,
341 S.E.2d 186 (Va. 1986) ....................................................15, 27

*Eitel v. Schmidlapp*,
459 F.2d 609 (4th Cir. 1972) .................................................18, 19

*HCP Laguna Creek CA, LP v. Sunrise Senior Living Mgmt.*,
737 F. Supp. 2d 533 (E.D. Va. 2010) ...........................................24

*Murphy v. Holiday Inns, Inc.*,
219 S.E.2d 874 (Va. 1975) .....................................................18, 19

*Raney v. Barnes Lumber Corp.*,
81 S.E.2d 578 (Va. 1954) ..............................................................18

*Reistroffer v. Person*,
439 S.E.2d 376 (Va. 1994) ............................................................15

*Roanoke Cement Co., LLC v. Falk Corp.*,
413 F.3d 431 (4th Cir. 2005) ........................................................13

*Saks Fifth Ave., Inc. v. James, Ltd*,
    630 S.E.2d 304 (Va. 2006) ....................................................................29, 30

*United States v. Guglielmi*,
    929 F.2d 1001 (4th Cir. 1991) ......................................................................34

*United States v. Robin*,
    553 F.2d 8 (2d Cir. 1977) ......................................................................34, 35

*United States v. Yellow Cab Co.*,
    338 U.S. 338 (1949)......................................................................................13

*Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*,
    618 F.3d 417 (4th Cir. 2010) ......................................................................13

*Whitfield v. Whittaker Memorial Hospital*,
    169 S.E.2d 563 (Va. 1969) ..........................................................................19

**RULE**

Fed R. Civ. P. 52(a)...........................................................................................13, 14

**OTHER AUTHORITY**

Restatement (Second) of Agency § 1 (1958)...........................................................18

# JURISDICTIONAL STATEMENT

Plaintiff-Appellant Petr Bocek, M.D., Ph.D., initiated this civil action on May 19, 2011, in the United States District Court for the Eastern District of Virginia, Alexandria Division ("District Court"). Pursuant to 28 U.S.C. § 1332(a)(1), the District Court properly maintained original jurisdiction, because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

On appeal from final judgment in the District Court, this Court has appellate jurisdiction, pursuant to 28 U.S.C. § 1291.

# STATEMENT OF ISSUES

1. Whether the District Court's consideration of not only the ambiguous written agreement, but the conduct of the parties, and all the surrounding facts and circumstances, was proper under Virginia law in determining whether an agency relationship existed to support Appellant's claim for breach of fiduciary duty?

2. Whether the District Court's determination that no agency relationship existed between Appellant and Appellees relating to the purchase of Allergy Care Centers was plausible given Appellant's failure to establish the intent of the parties, consent to act on his behalf, and his right to control the work and manner of performance by Appellees?

3. Whether the District Court properly held that Appellant was not entitled to recover his alleged damages under his claim for breach of fiduciary duty, because he sought equitable relief that was not pleaded in his Amended Complaint, and he did not prove the amount of such damages with any reasonable degree of certainty and without a direct and proximate cause to Appellees' alleged wrongdoing?

**STATEMENT OF CASE**

This diversity action arises from a contract for a financial business evaluation between Appellant-Plaintiff Petr Bocek, MD, PhD ("Bocek") and JGA Associates, LLC ("JGA"). In November 2010, Bocek contacted JGA to assist him in compiling the necessary financial information to start up his own medical practice. JA000075; JA000080; JA000221-23. At that time, Bocek informed JGA that he was a medical doctor specializing in allergy/immunology, and wanted JGA to research the financial feasibility of creating a new allergy/immunology practice to facilitate the startup of that practice. JA000080-81; JA000221-23.

Bocek is an allergist who lives in Maryland and was, at all relevant times, licensed to practice medicine in Virginia and Maryland. Appellee-Defendant Joseph P. Amato ("Amato") founded JGA, a Virginia limited liability company that specializes in providing development strategies and financial proposals to entrepreneurs and existing businesses, for purposes of achieving financing from

lending institutions.  JA000074-75.  Amato is the sole member and manager of

JGA, but at various points has employed numerous technicians and consultants.

*Id.*

On November 10, 2010, Bocek and JGA entered into a written contract,

which enumerated the services and fees associated with the creation of a financial

feasibility document, and provided for additional, subsequent services that related

to assistance in securing third party financing for the development, underwriting,

and funding of a start-up medical practice ("Letter of Agreement").  JA000221.

On November 15, 2010, Bocek emailed JGA to inquire whether it was

feasible to purchase an existing medical practice.  JA000230.  In his email, Bocek

indicated that his former employer, Allergy Care Centers, Virginia, Inc. ("ACC")

was for sale.  *Id.*  He wrote, ". . . the advantage is that I am fully credentialed under

it and I could get to work immediately if I acquired it."  *Id.*  In a subsequent email

that same day, Bocek informed JGA that a potential acquisition of ACC would be

even more complicated because ACC owed him a severance package and he was

currently working with a lawyer to negotiate with the practice.  He voiced concern

over whether it could be an option.  On December 1, 2010, JGA informed Bocek

that JGA had reached out to Peter Klenk, who was handling the sale of ACC as the

executor of the Estate of Charles Valentine, the previous owner of ACC (the

"Estate"), and he confirmed the practice was still for sale.  JA000232.

In December 2010, Bocek voiced further concern about the ability to finance an acquisition of an existing practice, and continued to express hesitation regarding his ability to be involved in a purchase of his old practice. JA000084-85. JGA began to investigate potential lenders as a possibility for funding a potential purchase of ACC. *See id.* From as early as mid December 2010 to February 2, 2011, Bocek expressed that he may not have the necessary funds for an initial capital projection in order to purchase ACC's assets. *See* JA000190. Consequently, Bocek and JGA discussed other possibilities if Bocek was not able or remained uncertain about his ability to produce an initial injection, including the option of Bocek contracting with a mezzanine partner or forming a partnership with JGA or another company. *See id.* On December 27, 2011, Bocek forwarded to JGA a portion of an email he received from his attorney, S. Micah Salb, Esq. ("Salb"), regarding Bocek's interest in ACC. JA000267-68. Salb wrote:

> The more pressing question relates to the structuring of your purchase arrangement with JGA. I had understood that your agent was purchasing ACC on behalf of an undisclosed purchaser – not that it was doing the transaction with the intention not to hold the company but to resell it to you. That raises a concern for me that the estate could conceivably contend that you and JGA acted improperly by making an arrangement to purchase the company through a straw purchaser knowing that the estate would not sell directly to you.

*Id.*

During this entire period, Bocek's role in the purchase of ACC had yet to be defined.  *See* JA000269-71.  JGA and Bocek discussed various options for how to structure a potential joint relationship if JGA should pursue and succeed in winning the bid to negotiate the purchase for ACC: 1) an opportunity for Bocek to purchase the practice from JGA, or a potential new company set up by JGA, after JGA and the Estate completed the transaction; 2) a partnership between JGA and Bocek, in a new company set up by JGA to purchase ACC, if Bocek was not able to finance the purchase of the practice in its entirety from JGA; and 3) Bocek might work for the company that purchased ACC, as the medical director or a key employee at his former salary, if he could not finance the purchase of ACC's assets from JGA or its new company.  JA000265-66.

Significantly, Bocek and JGA (and Amato) never formed an agreement or consented to a relationship regarding the purchase of ACC's assets.  JA000640.  Except the Letter of Agreement, Bocek and JGA (and Amato) never formed any other agreements, or consented to another or different relationship.  *See id.*  Indeed, the parties expressly intended to further investigate the possibilities and ultimately negotiate a transparent written agreement that would define and memorialize the parties' relationship regarding a potential purchase of ACC's assets.  *See id.*

On February 8, 2011, Amato met with ACC manager Terri Crook ("Crook") and Brian August, President and CEO of Waterford Holdings, LLC ("August") for

a site visit of ACC, where Amato, Crook, and August discussed various operational issues with the practice. During the course of this discussion, Crook informed Amato and August that Dr. Petr Bocek, ACC's former medical director, had been fired from ACC for reasons related to sexual misconduct towards female staff members and other unlawful actions pertaining to fraudulent prescriptions. *See* JA000639; JA000161-62.

Upon his return from the ACC site visit, JGA received an executed Letter of Intent from Klenk's attorneys handling the sale of ACC. JA000301-303. JGA sought verification from the Estate regarding what they had learned from Crook at the ACC site visit regarding the events surrounding Bocek's employment termination. On February 16, 2011, JGA received Bocek's employment file from the Estate, which included written reports verifying the sexual harassment and prescription misconduct information previously shared at the site visit, as well as copies of active non-trespassing orders issued by the Montgomery County Department of Police that governed four of the ten ACC locations that were issued against, and acknowledged by, Bocek upon his termination. JA000158; *see also* JA000638-39.

On February 17, 2011, by written letter, JGA terminated its contract with Bocek, pursuant to the terms set forth in the Letter of Agreement. JA000317; JA000221-223.

On May 13, 2011, ACC entered into an Asset Purchase Agreement with A2 Medical Group, Inc. ("A2 Medical Group"), a company formed by August, Amato, and Jeffrey Renzulli to purchase the assets of ACC. The Asset Purchase Agreement was subsequently submitted to the Orphans' Court Division of the Court of Common Pleas in Philadelphia, Pennsylvania (the "Orphans' Court") for approval. JA000331-340. On May 19, 2011, despite knowing that the sale of ACC was pending in the Orphans' Court, Bocek filed a diversity action in the United States District Court for the Eastern District of Virginia, Alexandria Division, seeking injunctive relief and express and constructive trusts, and alleging breaches of contract and fiduciary duties, naming JGA, Amato, and ACC as defendants. *See* JA000003. Following the sale of ACC's assets to A2 Medical Group on June 22, 2011, Bocek dismissed ACC and amended his complaint to name A2 Medical Group as a defendant, alleging claims for breach of fiduciary duties under joint venture and agency theories against JGA and Amato, breach of contract against JGA, and a claim for fraudulent conveyance against JGA, Amato, and A2 Medical Group. JA000007; JA000009-10.

Following extensive discovery and the taking of several witness depositions, JGA, Amato, and A2 Medical Group moved for summary judgment on each of Bocek's four counts. On April 5, 2012, the District Court issued a memorandum

opinion and order, granting JGA, Amato, and A2 Medical Group's motion for summary judgment on each of the four counts.

Bocek appealed the summary judgment decision of the District Court ("First Appeal"). On appeal, this Court affirmed the District Court's ruling on summary judgment as to Bocek's claims for fraudulent conveyance (count one), breach of contract (count two), and breach of fiduciary duty upon a joint-venturer theory, agreeing with the District Court that Bocek had failed to adduce sufficient evidence to support his claims. The Court reversed the District Court's summary judgment decision as to Bocek's breach of fiduciary duty claim based upon an agency relationship (count two), and remanded for a trial on the merits. In determining whether to do so, the Court was faced with the issue of whether Bocek was precluded under Virginia law from maintaining a tortious breach of fiduciary duty claim stemming from an alleged relationship that arises from a contractual agreement. The Court acknowledged that Virginia law recognizes the rule that a party cannot maintain an action in tort for an alleged breach of a duty that arises solely by virtue of a contractual relationship between the parties. However, the Court noted that this rule does not apply where the contract has been terminated before the alleged breach occurred. The Court determined, for summary judgment purposes, Bocek had demonstrated that significant facts were in dispute–which, if proven, would support recovery for his breach of fiduciary duty claim. Of course,

on appeal from summary judgment, this Court did not determine the validity of the material factual issues in dispute.

Additionally, the nature and the arguments made by Bocek in the First Appeal regarding his breach of contract claim warrant specific attention. Throughout the litigation, and wholly depending on the posture of the case, Bocek altered his position as to whether the written Letter of Agreement or a separate, oral straw-purchase agreement, formed the basis for his breach of contract claim against JGA. In his Amended Complaint, he seemingly merges the two to allege a modified oral agreement. However, in his opposition to JGA, Amato, and A2 Medical Group's motion for summary judgment, Bocek steadfastly claimed that the contract underlying his breach of contract claim was an oral straw-purchase agreement between JGA and Bocek, whereby JGA would purchase ACC on Bocek's behalf and immediately transfer its assets to him. In the First Appeal, this Court found that the evidence established that the parties contemplated numerous relationships and intended to negotiate and memorialize their understanding and obligations in a formal, written contract. Consequently, the Court agreed with the District Court that Bocek could not maintain a claim for breach of an undefined–and thus legally unenforceable–contract.

In the First Appeal, Bocek did not appeal the District Court's determination that his breach of contract claim was based on the oral straw-purchase agreement

and not the written Letter of Agreement. Indeed, if Bocek had appealed such a finding, he would have been asking the Court to reverse the District Court because it followed Bocek's instruction as to the basis for breach of contract claim.

Ultimately, the decision to bring and argue a claim for breach of contract based on an unsubstantiated, oral straw-purchase agreement, rather than the undisputed written Letter of Agreement, was essentially (and seemingly) a strategic litigation decision by Bocek to avoid dismissal on summary judgment.

On remand from this Court, the District Court held a bench trial and considered Bocek's remaining claim for breach of fiduciary duty based upon an alleged agency relationship formed between the parties. The District Court determined that Bocek failed to prove the existence of an agency relationship that would give rise to a fiduciary duty to support his claim. The District Court also found that Bocek had failed to establish damages to which he was entitled to recover. Bocek appealed the District Court's findings and order dismissing his claim for breach of fiduciary duty.

Consequently, in the instant appeal, the Court is faced with a similar question as presented in the breach of contract claim from the First Appeal, regarding an alleged-straw purchase agreement and obligations stemming from the written Letter of Agreement that concern the purchase of ACC's assets.

## SUMMARY OF ARGUMENT

On appeal from the District Court's determination that Bocek failed to prove the existence of an agency relationship to give rise to his claim for breach of fiduciary duty–or to establish recoverable damages–this case is before the Court for review of the District Court's factual findings.

The District Court properly studied the evidence presented at trial, and was able to thoroughly judge the credibility of the party witnesses in this case. In doing so, the District Court concluded that the evidence demonstrated the parties contemplated and discussed various options for a potential relationship relating to the purchase of ACC's assets, but did not consent, or otherwise agree, to any obligations outside of those provided for in the Letter of Agreement. Indeed, the testimony and supporting documentation provided convincing evidence that the parties did not establish an agent-principal relationship, but, instead, they consistently and explicitly expressed their intent to consider the options available to each of them, potentially negotiate the terms of an agreement, and memorialize their understandings and obligations to one another in a written contract. Moreover, the District Court found that Bocek had not shown and proven that the parties intended and consented to JGA and Amato acting on Bocek's behalf, and there was certainly no evidence demonstrating that JGA and Amato agreed to be subject to Bocek's control.

Accordingly, the District Court properly held that no agency relationship relating to ACC had been established between Bocek and JGA and Amato. Therefore, Bocek failed to prove his claim for breach of fiduciary duty and judgment was properly entered in favor of JGA and Amato.

The District Court's finding that no agency relationship existed, based on the evidence presented and with due consideration to the credibility of the two party witnesses that testified at trial, is a factual determination that must be upheld unless clearly erroneous. Because such factual determination is abundantly supported by the evidence, viewed as a whole, in this case, the District Court's findings should be affirmed.

Likewise, the District Court made a factual determination that even if Bocek had demonstrated the existence of an agency relationship related to ACC, he failed to establish damages to which he was entitled to recover. Under Virginia law, claims for "lost profits," are not presumed. Rather, to recover under a "lost profit" theory, Virginia law requires a party to prove–with reasonable certainty–the amount of those lost profit damages sought, and establish that the amount of such damage is the direct and proximate cause of the defendant's wrongdoing. The District Court properly found that Bocek neglected to establish the requisite proof required under a "lost profit" theory, and as a result, his purported damages were far too speculative and uncertain to allow for their recovery.

Accordingly, pursuant to the clearly erroneous standard of review that governs the District Court's factual determinations raised in this appeal, the findings and rulings of the District Court should be affirmed as supported by the evidence presented during the trial on the merits.

## STANDARD OF REVIEW

On appeal from a judgment resulting from a bench trial, the appellate court reviews a district court's ruling under a mixed standard of review. *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 427 (4th Cir. 2010) (quoting *Roanoke Cement Co., LLC v. Falk Corp.*, 413 F.3d 431, 433 (4th Cir. 2005)). While conclusions of law are reviewed *de novo*, the appellate court may not reverse findings of fact unless clearly erroneous. *Id.* (quoting *Roanoke*, 413 F.3d at 433); *see also* Fed R. Civ. P. 52(a) (2014) ("Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.")

Where two permissible views of the evidence exist, the factfinder's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City, North Carolina*, 470 U.S. 564, 574 (1985) (quoting *United States v. Yellow Cab Co.*, 338 U.S. 338, 342 (1949)). Accordingly, so long as "the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting

as the trier of fact, it would have weighed the evidence differently." *Id.* at 573-74. Importantly, this rule applies even when the district court's findings do not rest on credibility determinations, but are instead based on physical or documentary evidence or inferences from other facts. *Id.* at 574.

Moreover, when the district court makes factual findings that are based on determinations concerning the credibility of witnesses, Federal Rule of Civil Procedure 52(a) "demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Id.* at 575; Fed. R. Civ. P. 52(a) (2014). While the appellate court may find error even in factual findings purportedly based on a credibility determination, certain other denominating factors must be present, such that the objective evidence contradicts the witness' story or the story itself is so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it. *Id.* Importantly, however, where the finding of the district court judge "is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Id.*

# ARGUMENT

**A. Upon Consideration of the Testimony and All Supporting Evidence Presented, the District Court Properly Determined that Appellant Failed to Carry his Burden to Prove the Existence of an Agent-Principal Relationship to Support his Claim for Breach of Fiduciary Duty.**

   **1. The question of whether an agency relationship exists is a question of fact.**

The determination as to whether or not an agency relationship exists between two parties is a factual question for the trier of fact, unless the purported agency relationship depends upon unambiguous written documents or undisputed facts. *Reistroffer v. Person*, 439 S.E.2d 376, 378 (1994) (citing *Drake v. Livesay*, 341 S.E.2d 186, 189 (Va. 1986)).

As Appellant now acknowledges, no agency relationship arises from the Letter of Agreement that remotely contemplates ACC or the purchase of its assets. On appeal, Appellant relies, instead, on the conduct and communications between the parties, as demonstrated by the testimony and evidence presented to the District Court at trial.

Notwithstanding, by its plain terms, the Letter of Agreement does not unambiguously establish an agency relationship between Bocek and JGA and Amato that contemplates the purchase of ACC's assets on Bocek's behalf.

Accordingly, the District Court's determination as to whether or not an agency relationship existed to support Appellant's claim for breach of fiduciary duty is a factual finding that may not be reversed unless clearly erroneous.

>    **2.    The District Court properly considered the conduct of the parties and the surrounding facts and circumstances in finding that the evidence failed to prove an agent-principal relationship.**

Appellant's contention that the District Court based its ruling solely on the Letter of Agreement is puzzling for a number of reasons.  First, just prior to trial, Bocek moved for summary judgment on his breach of fiduciary duty claim, arguing that the Letter of Agreement unambiguously established an agency relationship between the parties.  [Plaintiff's] Motion for Summary Judgment [Dkt. 192].   The District Court denied Bocek's motion for summary judgment, ruling that material facts regarding the purported agency relationship were in dispute and could not be determined by the Letter of Agreement, and, consequently, the determination required the presentation of evidence at trial.[1]  *See* Order [Dkt. 203].

Furthermore, the District Court articulated extensive factual findings in its decision from the testimony and physical evidence produced at trial, which included its factual determination that the parties had not agreed or assented to an agent-principal relationship–or any definable relationship–regarding ACC.  As set forth in its decision, the District Court considered all of the email communications

---

[1] Bocek does not appeal the District Court's ruling denying his motion for summary judgment.

and documents presented as evidence at trial, as well as the parties' own testimony, to determine the intent and conduct of the parties together with the surrounding facts and circumstances.  Significantly, in a full-day bench trial, Appellant chose to call and examine only two witnesses–Amato and himself.  The District Court not only studied the evidence presented and the testimony of the two parties, but also gauged and evaluated their credibility during exhaustive direct and cross examinations of both witnesses.  The District Court heard testimony as to each party's intentions and understandings, and read email exchanges that shined further light on the parties' understandings and status of a potential agreement or relationship.   From the evidence presented, and upon weighing the credibility of the witnesses, the District Court made the factual determination that the parties had not consented to or otherwise formed an agency relationship that related to the potential purchase of ACC's assets.

The District Court's determination that no agency relationship existed is a factual finding, made after full consideration of the evidence regarding the parties' conduct and evaluation of witnesses and their testimony at trial.  Accordingly, the District Court properly considered and weighed the evidence presented in determining that Appellant failed to establish the existence of an agency relationship to support his claim, and its factual findings are to be duly regarded, and thus reviewed under a clearly erroneous standard.

**3.    The District Court correctly determined that Appellant failed to prove the existence of an agent-principal relationship to support his claim for breach of fiduciary duty.**

The District Court correctly determined that no agency relationship existed, because the parties never agreed or consented to an agency relationship regarding the purchase of ACC's assets or otherwise, and Bocek never had a right to control JGA or Amato's actions.

Virginia law does not presume that two parties–even, and perhaps especially, two contracting parties–intend to form an agency relationship. *See Raney v. Barnes Lumber Corp.*, 81 S.E.2d 578, 584 (Va. 1954). On the contrary, the law presumes that one is acting for himself and not as the agent of another. *Id.* at 584. Consequently, Bocek, as the party who has alleged a principal-agent relationship, has the burden of proof. *See id*.; *see also Allen v. Lindstrom*, 379 S.E.2d 450, 454 (Va. 1989) ("One who alleges agency must prove it.");

Agency is a "consensual relationship." *Murphy v. Holiday Inns, Inc.*, 219 S.E.2d 874, 876 (Va. 1975). Under Virginia law, an agency relationship is formed "from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Id.* (citing the Restatement (Second) of Agency § 1 (1958)). Stated another way, an agency relationship "arises from the agreement or consent of the parties that one shall act as the agent of the other." *Eitel v. Schmidlapp*, 459 F.2d 609, 614 (4th

Cir. 1972).  Consequently, "the intention of the parties is the significant element in determining whether the relationship exists."  *Id.*

Therefore, in determining whether a person is the agent of another, two critical factors are to be examined: (1) the power of control; and (2) the intentions of the parties.  *See Murphy*, 219 S.E.2d at 876; *Eitel*, 459 F.2d at 614.  First, it is necessary that the purported agent be subject to the principal's control, or right of control, not only with regard to the work to be done, but also the manner of performing it.  *Whitfield v. Whittaker Memorial Hospital*, 169 S.E.2d 563, 567 (Va. 1969).  The continuous subjection to the will of the principal is what distinguishes an agency agreement from other agreements.  *Murphy*, 219 S.E.2d at 876.  Second, the intention of the parties is determined from all of the facts and circumstances of the particular case, not solely by a party's description of their status.  *Eitel*, 459 F.2d at 614.  Therefore, the relationship of the parties does not depend on the label provided by one or both of the parties; rather, the Court determines from all of the evidence whether the requisite right to control existed and whether the parties' intentions establish an agency relationship under the law.  219 S.E.2d at 876 (quoting *Chandler v. Kelley*, 141 S.E. 389, 391-92 (1928)).

The testimony of the witnesses and complete record, as presented at trial, more than sufficiently supports the District Court's finding that Appellant failed to carry his burden to prove the existence of an agency relationship relating to the

acquisition of ACC. First, Bocek takes issue with the District Court's examination

of the Letter of Agreement and its consideration of a purported, separate, straw-

purchase agreement, in making its determination that no agency relationship

existed. Importantly, however, and as the District Court expressed in its decision,

the reason for its analysis regarding whether the Letter of Agreement or straw-

purchase agreement established an agency relationship between the parties is

because Bocek's explicit position at trial and throughout this litigation was that

JGA and Amato owed him a fiduciary obligation that arose from the Letter of

Agreement–or, at other times, a purported, separate straw-purchase agreement.

Notably, throughout the over three-year litigation in this case, Bocek has

continuously changed his position, depending on the posture, as to when and how

he contends the parties entered into an agency relationship (as he had previously

done when required to address which agreement he alleged as the basis for his

breach of contract claim, which was previously dismissed on summary judgment).[2]

---

[2] In the Amended Complaint, Bocek argues that an agency relationship arose from a straw-purchase arrangement, whereby JGA and Amato agreed JGA would purchase the assets of ACC for immediate transfer to Bocek. Amended Complaint [Dkt. 66], ¶¶ 265-66. In the First Appeal, Bocek claimed the alleged agency relationship with JGA and Amato was formed under a straw-purchase agreement that was completely separate and apart from the Letter of Agreement. Brief for Plaintiff-Appellant, Appeal No. 12-1590, Doc. 50 at 23, 42. On remand, Bocek filed a motion for summary judgment on the remaining breach of fiduciary duty count, claiming emphatically that it is "obvious beyond peradventure" the Letter of Agreement unambiguously created an agency relationship that would encompass the purchase of ACC. [Plaintiff's] Reply to Opposition to Motion Summary

Notwithstanding, Bocek has unequivocally maintained that one or both of these purported agreements demonstrate that the parties assented to a principal-agent relationship, which then gives rise to a fiduciary duty to support his claim for tortious breach of fiduciary duty. For that reason, the District Court carefully examined both the written Letter of Agreement and all of the evidence related to the parties allegedly agreeing or consenting to a straw-purchase arrangement–or any agreement concerning the purchase of ACC's assets. In doing so, the District Court found the parties never agreed that JGA would purchase ACC's assets for Bocek, and JGA and Amato never consented to act on Bocek's behalf and subject to his control for any purpose. Indeed, such a straw purchase arrangement was, ultimately, the basis for Bocek's breach of contract claim, which the District Court and this Court concluded lacked a sufficient factual basis to survive summary judgment.

In reviewing the Letter of Agreement, the District Court properly noted that the agreement should not be translated into a general, all-encompassing principal-

---

Judgment [Dkt. 199], 3-4; *see also* [Plaintiff's] Motion for Summary Judgment [Dkt. 192], 11-12. At and subsequent to trial, Bocek argued that the Letter of Agreement established an agency relationship between the parties and that JGA and Amato consented to serve as Bocek's agent for purposes of acquiring ACC, which he claimed was evidenced by the email communications exchanged between the parties. Plaintiff's Proposed Findings of Fact and Conclusions of Law [Dkt. 206], 13-14. In this appeal, Bocek takes the position that the parties' conduct unequivocally established an agreement to serve as Bocek's agent for the purchase of ACC, i.e., the straw-purchase theory that was seemingly abandoned after the First Appeal.

agent agreement.  At trial, Bocek attempted to highlight a line from the Letter of Agreement, which provides, "[t]he Client agrees that the Consultant has the right to act [as] an agent representing the Client to Interested Parties during the term of this Agreement and to the payment of mutually agreed upon fees for services rendered."  JA000221; JA000083.  A more complete reading of the Letter of Agreement revealed that "Interested Parties" was expressly defined as "commercial lending or other institutional concern," and was specific to the submission of the financial feasibility evaluation to lending institutions.  Furthermore,  immediately following, the Letter of Agreement provides,

> [i]t will be the Client's responsibility to negotiate the final terms and conditions of an agreement with respect to any Transaction.[3]  The Consultant, upon request of the Client, will assist in negotiating the terms and conditions of any such agreement, but all final decisions with respect to such terms and conditions will be the sole responsibility of the Client.  The Client does not grant the Consultant any right, power privilege or authority to assume or create any obligation or responsibility, expressed or implied, for or on behalf of the Client, or to bind the Client in any manner whatsoever, without the prior approval of the Client.

JA000221.

Furthermore, JGA only agreed to provide an independent analysis and create an evaluation as to Bocek's financial ability to own a subject medical practice.  If

---

[3] "Transaction" was specifically defined in the Letter of Agreement as "business development financing (in a project amount to be determined) via a business term note." JA000221.

the evaluation was positive, JGA's report may be shared with banking institutions and other lenders for their consideration in whether to potentially provide a loan to Bocek. As the Letter of Agreement demonstrates, JGA did not agree to act as Bocek's agent, or on his behalf, for every aspect of starting a new business or acquiring an existing business. The Letter of Agreement should not be misread as a brokerage agreement, as JGA was not Bocek's broker, and such an arrangement was never contemplated by the parties and is not a service JGA and Amato would be able to provide.

Second, the District Court did not simply end its analysis and consideration with the Letter of Agreement and unsubstantiated straw-purchase agreement. Indeed, as evidenced in its findings, the District Court examined the conduct and communications between the parties and determined from the evidence that, while the parties contemplated various and evolving scenarios regarding their relationship and the potential acquisition of ACC's assets, no consensual relationship relating to the pursuit or purchase of ACC had been consented to or acted upon–and the parties certainly had not reached any agreement that JGA or Amato would act as Bocek's agent, and subject to his control for any purpose, much less for a potential $1.2 million purchase of ACC's assets.

Third, Appellant cites a list of unsubstantiated allegations that he thinks demonstrates the parties' mutual consent to act on Bocek's behalf and subject to

his control–all of which were completely disputed and rebutted at trial. Indeed, Appellant offers no citations to the record to support these wholly unproven conclusions. *See* <u>Brief for Plaintiff-Appellant</u> [Doc. 25], 31–33. Moreover, despite taking issue with the District Court's examination of the Letter of Agreement, Appellant, almost in the same breath, argues that performing contracted-for services under the Letter of Agreement created an agency relationship, because JGA was performing those contracted-for services at Bocek's behest. Essentially, Appellant is again arguing that the Letter of Agreement established an agency relationship between the parties.

To this end, the basic elements of contract formation, although admittedly elementary, provide a useful example. The formation of a contract, generally, requires an offer, acceptance, and consideration. While some agreements seemingly favor one contracting party over another, a contract is performed for some party's benefit, and the benefit to the party is in exchange for the consideration given. Appellant's position in this case would see that every contract establishes an agency relationship, because the contract is performed for one of the party's benefit. However, unless expressly provided for, the performance of one party's end of a bargain under a contractual agreement is entirely different from assenting to act as an agent on behalf of the other contracting party and subject to their control. *See*, *e.g.*, *HCP Laguna Creek CA, LP v. Sunrise Senior Living*

*Mgmt.*, 737 F. Supp. 2d 533, 549 (E.D. Va. 2010) ("Where there is a typical business relationship without evidence that the parties intended to create a fiduciary relationship, the court may not create one.") (Internal quotation omitted).

The Letter of Agreement does not establish a general agency relationship that requires or contemplates JGA and Amato are subject to Bocek's right of control with the work to be done and how it is to be performed; nor does it demonstrate JGA and Amato are authorized and consent to act on Bocek's behalf. Indeed, by its express terms, the Letter of Agreement establishes that JGA agreed to create a financial feasibility evaluation document, which Bocek could consider and then subsequently choose to provide to banks and other lenders for their review in determining whether to issue a loan or other financial assistance to him. Bocek did not have a right to control how JGA or Amato created the financial feasibility document, or how they retained the information in order to compute their analysis, and the evidence plainly demonstrates that JGA and Amato never consented to be subject to such control.[4] Consequently, the Letter of Agreement and the parties' understanding of its terms simply do not establish an agency relationship, and no actions or services that were provided pursuant to the Letter of

---

[4] The same terms and understanding must govern even where JGA ostensibly prepares a financial feasibility evaluation document concerning ACC's assets. The Letter of Agreement, regardless of the subject practice to be evaluated, does not establish a principal-agent relationship under Virginia law.

Agreement could possibly serve as the basis for Bocek's breach of fiduciary duty claim.

### 4. Appellant's reliance on this Court's opinion in the First Appeal is inapposite to the current posture.

In the First Appeal, this case came before the Court for *de novo* review of the District Court's ruling on JGA, Amato, and then-party A2 Medical Group's motion for summary judgment. The District Court had granted the motion summary judgment on each of Bocek's four counts, to wit: (1) fraudulent conveyance against JGA, Amato, and A2 Medical Group; (2) breach of fiduciary duty, under an agency theory, against JGA and Amato; (3) breach of contract against JGA; and (4) breach of fiduciary duty, under a joint-venturer theory, against JGA and Amato.

With respect to the claims for fraudulent conveyance (count one), breach of contract (count three), and breach of fiduciary duty under a joint-venturer theory (count four), the District Court found that Bocek had failed to adduce sufficient evidence to raise a genuine dispute of material fact and for a reasonable trier of fact to find in his favor. As to the claim for breach of an agency fiduciary duty (count two), the issue raised on summary judgment before the District Court was whether Bocek could maintain a claim for breach of fiduciary duty in tort that arises from an agency relationship purportedly established by contract.

Importantly, the District Court did not consider whether– and which– material facts may be in dispute regarding the claim for breach of fiduciary duty under an agency theory. Of course, JGA and Amato did not seek dismissal of Bocek's claim on that basis, because Bocek's factual allegations concerning a purported agency relationship were hotly in dispute. Had JGA and Amato taken such position, they would have almost certainly been precluded from summary judgment on count two, as Bocek's claim (at that time) was not based upon an agency relationship that arose out of an unambiguous written agreement. As cited above, unless the alleged agent-principal relationship depends upon unambiguous written documents or undisputed facts, the determination as to whether an agency relationship exists is a question of fact for the factfinder. *See Drake*, 341 S.E.2d at 189.

Accordingly, in the First Appeal, this Court was not presented with the factual issues in dispute regarding Bocek's claim for breach of fiduciary duty under an agency theory, and the Court carefully and appropriately specified that its analysis and decision were for purposes of summary judgment. *See* JA000041. Appellant also recognizes the dissimilar postures between the First Appeal and the instant appeal, but he claims that he proved, at trial, the facts set forth in the Amended Complaint that were, admittedly, before this Court previously as mere allegations. *See* Brief for Plaintiff-Appellant [Doc. 25], 23.

The District Court heard extensive testimony from both party witnesses, reviewed all of the documentary evidence presented, and weighed the witnesses' credibility. The District Court's consideration and ability to assess not only the substantive manner in which the witnesses answered questions, but also their demeanor and inflection on examination is especially important in this case, because Bocek makes significant allegations that are seemingly based on uncorroborated discussions and self-serving intentions.

**B.      The District Court Correctly Determined that Appellant Failed to Prove Recoverable Damages.**

Notwithstanding its finding that Appellant failed to establish a legal duty to support his claim, the District Court also properly found that Appellant failed to establish any damages to which he would have a right to recover.

In this appeal, Appellant claims that he is entitled to damages in the amount of "revenue that he would have enjoyed when and if he had purchased ACC." <u>Brief of Plaintiff-Appellant</u> [Doc. 25], 40. Appellant attempts to quantify this amount by claiming that he is entitled to $450,000.00, per year, from the time he would have returned to ACC as its owner. Additionally, Appellant claims that the question when determining damages is not whether ACC ultimately showed a profit or loss, but what revenue he expected to receive as the owner-physician of the practice.

Appellant's perceived damages are not only speculative and wholly unsupported and rebutted by the evidence in this case, but they are a gross

misstatement of Virginia law governing recoverable damages in actions alleging breach of fiduciary duty.

First, even where a party is able to demonstrate the existence of an agency relationship and a breach of a fiduciary duty arising therefrom, damages of prospective profits are not presumed; to the contrary, they must be proven with the requisite degree of reasonable certainty as to amount and causation. *See Banks v. Mario Indus.*, 650 S.E.2d 687, 696 (Va. 2007). Moreover, there is simply no authority under Virginia law to support Bocek's contention that he is entitled to "lost revenue." Virginia law on damages provides for the recovery of "lost *profits*," but only upon a reasonably certain showing as to the amount to be recovered and that such amount is directly and proximately caused by the offending party's wrongdoing. *See Saks Fifth Ave., Inc. v. James, Ltd*, 630 S.E.2d 304, 311 (Va. 2006).

Therefore, Bocek had the burden to prove with reasonable certainty (1) the amount of prospective profits he claims entitlement to, and (2) a causal connection between JGA and Amato's alleged wrongful conduct and the damages claimed. *See id.* Significantly, however, "prospective profits are not recoverable in any case if it is uncertain that there would have been any profits, or the alleged profits are so contingent, conjectural, or speculative that the amount thereof cannot be

proved with a reasonable degree of certainty." *Banks*, 650 S.E.2d at 696 (quoting *Saks*, 630 S.E.2d at 311).

Bocek has no right to recover a purported lost salary in the amount of $450,000.00, because there is simply no evidence that he would have been able to pay himself such a high salary under the current and real financial condition of the former ACC practice. Indeed, the only evidence regarding the profits and losses of the business is from Amato's trial testimony, in which he explains that ACC, under its previous ownership, wrongly, and likely fraudulently, utilized billing practices that were inconsistent with the insurance companies' requirements. *See* JA000068. ACC's improper practices were discovered during an insurance company audit just six months after A2 Medical Group purchased ACC's assets. *See id.* After implementation of compliant billing practices, and even with all other factors being equal, A2 Medical Group would experience a drop in nearly forty percent of top-line revenue. *See id.* Consequently, the evidence exclusively demonstrates that A2 Medical Group has not produced any profit since its purchase of ACC's assets, but, instead, experienced losses in the approximate amount of negative $2,000.00 for the 2011 year-end, and negative $152,000.00 for the 2012 year-end. *See* JA000067-68; JA000070.

Bocek's theory of recovery for the amount of his previous salary is not a cognizable "lost profit" theory, as he did not–and cannot–establish the existence of

any profits from A2 Medical Group to claim that he has "lost."  He also fails to

offer any explanation as to how he would have been financially capable of

receiving such an abundant salary each year when the company is reporting net

losses.

Moreover, in order for Bocek to be entitled to the salary that he expected,

i.e., hoped, to earn as a physician and owner of ACC, the Court would have to

determine that there was an enforceable agreement between Bocek and JGA or

Amato that provided for the straw purchase of ACC's assets.  The salary Bocek

purports to have expected to receive as owner, *but for* JGA and Amato's alleged

breach, constitutes nothing more than expectation damages, which he is not

entitled to recover.  Indeed, this Court has already determined that Bocek and JGA

never mutually assented to any terms or structure for a straw-purchase

arrangement, and therefore, did not establish a contractual agreement.  *See*

JA000040.  The Court further acknowledged that the parties were considering a

number of possibilities regarding Bocek's role–all with widely varying costs and

consequences.  *See* JA000039.  These possibilities discussed included Bocek

participating as a minority partner in the entity purchasing ACC or Bocek perhaps

running the practice under contract with the purchasing entity.  *See id.*

Considering the evidence regarding the financial status of the practice, Bocek's

best and only argument for expecting damages in the amount of his previous salary

would be under a claim for breach of a contractual agreement to manage the practice with the entity that purchased ACC's assets. Unquestionably, the possibility of a contractual agreement to manage the practice was just one of many contemplated, and not-yet-contemplated, scenarios that could have developed–but none of the scenarios were ultimately selected, let alone agreed upon, by the parties.

Moreover, Bocek's contention that he is entitled to any salary or fee for managing and operating all of the ACC medical offices, neglects to account for the fact that he was prohibited from trespassing on the four ACC locations in Maryland–pursuant to non-trespassing orders issued by the Montgomery County, Maryland Department of Police–which, of course, included the locations in which he worked prior to his termination. He also fails to take into account the very likely occurrence that the entity that owned ACC would face liability for negligent hiring, and other serious claims, if it chose to hire Bocek to manage the practice– with full knowledge that he had been terminated from ACC following documented reports that he sexually harassed and assaulted female employees, and forged and uttered prescription painkiller medication from another physician's prescription pad–all of which he acknowledged at trial. *See* JA000638-39.

Undoubtedly, Appellant's theory of recovery for the amount of his previous salary is utterly speculative, does not account for significant and critical factors,

fails to demonstrate damages that are the direct and proximate cause of any alleged wrongdoing by JGA and Amato, and is, therefore, not recoverable under Virginia law.

Lastly, Appellant is not entitled to equitable relief, because he did not plead for equitable relief in his claim for breach of fiduciary duty.  As Bocek recognized in his pretrial motion to exclude certain evidence, which pertained to JGA and Amato's "unclean hands" affirmative defense, the remaining "claim for breach of fiduciary duties is a claim for damages, not equitable relief."  Plaintiff's Renewed Motion in Limine to Bar Introduction of Extraneous Material [Dkt. 194] at 8. Indeed, Bocek further asserted that he had no equitable claims for the District Court to consider and that the "sole equitable claim was his claim for Fraudulent Conveyance and Constructive Trust, but that claim is no longer in this case." *Id.* Therefore, as the imposition of a construction trust is an equitable award, even in the event Appellant managed to establish a breach of an enforceable fiduciary duty, he is not entitled to the imposition of a constructive trust that he seeks on appeal.

Because Appellant failed to prove any damages to which he may be entitled to recover with the requisite reasonable certainty, Appellant did not establish any recoverable damages under Virginia law.  Accordingly, notwithstanding its determination that Appellant failed to carry his burden to prove the existence and

breach of a fiduciary duty, the District Court properly determined that Appellant was not entitled to recover damages.

## C.  Appellant Has Not Demonstrated a Sufficient Showing of Impartiality to Warrant the Recusal and Reassignment of the District Court Judge in this Case.

This Court has adopted the Second Circuit's three-prong test to determine when it is necessary to assign a case upon remand to a different judge in a district court. *United States v. Guglielmi*, 929 F.2d 1001, 1007 (4th Cir. 1991).

The factors under the three-prong test are:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected; (2) whether reassignment is advisable to preserve the appearance of justice; and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Id.* (citing *United States v. Robin*, 553 F.2d 8, 10 (2d Cir. 1977)).

Notably, this test was developed from a collection of criminal cases, which concerned issues where the trial judge may have erroneously ruled on a motion to suppress evidence or reviewed a presentence investigation report that illuminated facts about the defendant, which would inevitably impact the judge's view of the defendant on retrial. *See*, *generally*, *Robin*, 553 F.2d at 10-11.

Appellant only offers two reasons for requesting the case be reassigned: (1) Judge Hilton, as the district court judge assigned to this case, twice ruled against him; and (2) Judge Hilton required "prompt submission of findings of fact and conclusions of law."

First, merely ruling against a party when determining the merits of a case is not a sufficient basis to show that a district court judge will have "substantial difficulty in putting out of his . . . mind previously expressed views." *See Guglielmi*, 929 F.2d at 1007. Appellant does not identify any specific evidence that would taint Judge Hilton's ability to fairly determine factual or legal issues in the event of remand; nor does Appellant identify any specific evidence that Judge Hilton unfairly disregarded at trial. Instead, Appellant only offers self-serving and leaping assertions that he clearly proved his allegations at trial, and that, as the factfinder, Judge Hilton was wrong for not finding in his favor.

Second, the trial transcript actually reflects a much different version of events regarding Judge Hilton's request for submission of the parties' proposed findings of fact and conclusions of law. *See* JA000217-18. Actually, Appellant's attorney expressed to the District Court that the transcripts were not necessary to draft Appellant's proposed findings of fact and conclusions of law, and Judge Hilton allowed the parties more time than initially envisioned to submit their proposals. *See id.* If Appellant truly felt he was prejudiced by the District Court's

seven-day deadline to file his proposed findings and conclusions, the proper avenue to express such a grievance is by filing a motion for an extension of time with the District Court, not raising it as a reason on appeal for a senior district court judge to be removed from an assigned case.

Appellant has failed to satisfy the factors recognized by this Court for necessitating the assignment of this case to a different district court judge. Consequently, Appellant's request to have this matter reassigned, if again before the District Court, is wholly inappropriate and would constitute a waste of judicial resources without yielding any cognizable gain in the appearance of fairness. Accordingly, if applicable, Appellant's request for reassignment should be denied.

## CONCLUSION

Having heard the merits of this case, and upon considering all of the evidence and weighing the credibility of the witnesses, the District Court made the appropriate and correct factual findings, and, consequently, properly rejected numerous allegations that had been levied against Appellees in the Amended Complaint. The District Court's factual determinations were not only plausible in light of the witnesses' testimony and the review of the evidence; they were astutely measured and consistent with the law of agent-principal formation in Virginia, and should be upheld.

Accordingly, Appellees respectfully submit this response brief in opposition to the instant appeal, and ask the Court affirm the factual findings and rulings of the District Court.

This 26th day of September 2014.

JGA ASSOCIATES, LLC and
JOSEPH P. AMATO
By Counsel

SHER, CUMMINGS AND ELLIS

By:   **/s/ David E. Sher**
David E. Sher
Mark D. Cummings
Kristen M. Kanaskie (Fourth Circuit
Admission Pending)
**Sher, Cummings and Ellis, PLLC**
3800 North Fairfax Drive, Suite 7
Arlington, Virginia 22203
Phone: 703-525-1200
Facsimile: 703-525-0067
dsher@sherandcummings.com

## REQUEST FOR ORAL ARGUMENT

Appellees-Defendants respectfully submit to the Court that oral argument is not necessary for this appeal. Pursuant to Fed. R. App. P. 34(a)(2)(A-C), this appeal is frivolous, the dispositive issues have been authoritatively decided as cited in Brief of Appellees, and the facts and legal arguments are adequately presented in the briefs and record and would not be aided by oral argument. Therefore, Appellants request for oral argument should be denied.

Respectfully Submitted,

_____/s/ **David E. Sher**_____
David E. Sher
*Counsel for Appellees*

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(C)

I hereby certify:

This brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(C) because it contains 8,597 words, excluding the sections of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using  Microsoft Word 2007 in Times New Roman 14-point font.

This 29th day of September 2014.

_____**/s/ David E. Sher**_____
David E. Sher
*Counsel for Appellees*

## CERTIFICATE OF SERVICE

Pursuant to Rule 25 of the Federal Rules of Appellate Procedure and Local Rule 25(b) of the United States Court of Appeals for the Fourth Circuit, I hereby certify that on this 29th day of September, 2014, I will electronically file the foregoing Corrected Brief of Appellees with the Office of the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

S. Micah Salb, Esq.
Mary E. Kuntz, Ph.D., Esq.
LIPPMAN, SEMKSER & SALB, LLC
msalb@lsslawyers.com
mkuntz@lsslawyers.com
*Counsel for Appellant*


_____/s/  **David E. Sher**_____
David E. Sher
*Counsel for Appellees*